IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2001

## QUANTREAL UNDERWOOD v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Shelby County**
**No. P-21303     Carolyn Wade Blackett, Judge**

---

**No. W2000-01774-CCA-R3-PC - Filed March 14, 2002**

---

The appellant, Quantreal Underwood, was convicted of second degree murder and two counts of aggravated robbery. He received a Range I sentence of twenty-five years for the murder conviction and two concurrent eight year terms for the robbery convictions. His convictions and sentences were affirmed by this Court on direct appeal. State v. Quantreal Underwood, No. 02C01-9604-CR-00120, 1997 Tenn. Crim. App. Lexis 1018 (Tenn. Crim. App. at Jackson Oct. 9, 1997). The appellant filed a post-conviction petition in May, 1999, wherein he alleged that his trial counsel was ineffective and thus deficient within the meaning of the Sixth Amendment to the United States Constitution. That petition was denied, and the appellant now brings the instant appeal. We have reviewed the record and find no error. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Glenn I. Wright, Memphis, Tennessee, for appellant, Quantreal Underwood.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney, for appellee, State of Tennessee.

### OPINION

As background, the following is this Court's direct appeal summary of the facts leading to the appellant's conviction.

> During the early morning hours of August 28, 1993, the victim, Dorrell Eggleston, was shot during a robbery of the Serve-Rite Market in Memphis. Twenty-three years of age at the time of the shooting, the victim died forty days later.

Jerome Bond, Jr., was attempting to leave the store when four or five armed males in black ski masks entered the store and ordered its occupants to the floor. According to Bond, four or five shots were fired. One of the robbers, who had a knee to Bond's back and a gun to his face, took his wallet, containing approximately $140.00. Bond recalled that another of the robbers, in response to a customer who was not cooperating, ordered another robber to "clock" the customer; however, no more shots were fired. It was only after the robbers left that Bond discovered that the victim had been shot.

Bond, who knew the defendant "by face," recalled seeing him standing outside the store just before the robbery; however, he was unable to identify any of the masked robbers. Bond remembered that one of the robbers had a .380 automatic pistol and that one of the shots sounded like a shotgun blast.

Andrew Bolden, the night manager at the market, was tending the cash register and talking on the telephone at the time of the robbery. He testified that there were about five customers in the store, including Bond and the victim, when three armed men wearing stocking masks entered the store and ordered the occupants to the floor. He recalled that one of the robbers ordered another to shoot a handicapped customer who was unable to lie on the floor. The customer was not shot. Bolden recalled that one of the robbers took money from the cash register.

After the robbery, Bolden discovered that the victim had been shot. Bolden recalled hearing four shots, some of which sounded different than others. He observed a bullet hole in the storage area near the victim and what appeared to be shotgun pellets above the door.

Caroline Hollister of the Memphis Police Department testified that when she arrived at the market, she asked the victim who had shot him. Describing the victim as scared and agitated, the officer recalled that the victim named the defendant and a Spencer Payne.

Anthony Yarborough witnessed the latter part of the Serve-Rite robbery. After hearing shots from his residence, he looked across the street in time to see some men exit the Serve-Rite and enter two different cars; one was a white Hyundai and the other a maroon Chevrolet. Yarborough recalled seeing a shotgun and observed that one of the men had a stocking over his head. He recognized one of the two getaway cars as that of Roderick Turner who lived in the

neighborhood. Yarborough testified that he had observed the defendant, whom he did not know but had seen before, driving the white car earlier in the day. Explaining that he was nervous and afraid for his family, Yarborough was unable to point out the defendant from the witness stand.

Demetrius Henderson, who had pled guilty to second degree murder and two counts of aggravated robbery because of this incident, testified for the state. He recalled that on the day of the robbery, the defendant, who was accompanied by his cousin, claimed that he had been robbed of his cocaine and would pay $700.00 and an ounce of cocaine for his assistance in this matter. Henderson testified that he joined with the defendant and six other men, all of whom were in two cars, a Hyundai and a Chevrolet, in an effort to find the defendant's robber. The defendant, Dennis Smith, and Demarcus Radliff were in the Hyundai. Henderson, Charles McGaughy, Thomas Watkins, Lee Antonio Boyd, and Carl Porter got into the Chevrolet.

Henderson testified that they first went to a residence but found no one at home. He stated that the men then proceeded to the Serve-Rite. According to Henderson, the defendant, who had purchased masks, handed them out to each of the participants before they went into the store. All but one was armed. The defendant, who gave Radliff .32 caliber bullets, had a .380 and another man had a shotgun. Porter, who was the only one without a gun, stayed in the car. Henderson said he had a .22, Boyd a .32, Radliff a .32, McGaughy a .380, and Watkins a 12 gauge shotgun. Henderson identified McGaughy as the robber who ordered the store occupants to the floor. He recalled that the robber with the shotgun, Watkins, fired before the others. Henderson, who denied firing a shot, testified that "a lot of people fired." He stated that Watkins and the defendant went to the back of the store during the course of the robbery.

By the time of this trial, McGaughy had also pled guilty to second degree murder and two counts of aggravated robbery. A witness for the state, he testified that the defendant claimed that he had been robbed and wanted some help. He recalled that the defendant stopped to acquire some stocking caps before the men entered the Serve-Rite. McGaughy claimed that he was without his mask and never fired his weapon, a .380, but conceded that he had "laid [two] people down" during the robbery. He claimed that he never received the quarter ounce of cocaine, the "juice" of crack, or the $700.00 the defendant represented he would pay. McGaughy admitted driving a burgundy

-3-

Chevrolet and said the defendant was in a small white sports car. On cross-examination, McGaughy admitted that he had failed to mention to police that the defendant entered the store. He acknowledged that he had told officers that Watkins, who he said had shot the victim, and Henderson did the shooting during the robbery.

Dr. Jerry Francisco, the Shelby County Medical Examiner, performed an autopsy. He testified that the victim had two gunshot wounds which did damage to the spinal cord and his lungs, liver, and other internal organs. Dr. Francisco measured one of the bullets at 32/100 of an inch. He explained that the victim, who was paralyzed from the neck down because of the shooting, died from the infections caused by the wounds.

The defendant presented no proof.

Id. at *2 - *7 (footnote omitted).

## Post-Conviction Hearing

During his trial, the appellant was represented by attorney Marvin Ballin. According to the appellant, Ballin did not properly investigate the case, did not obtain copies of police reports, nor did he speak with any of the witnesses on the indictment or those listed in the reporter. Specifically, the appellant complained that his attorney did not speak pre-trial with Jerome Bond, Jr., Andre Bolden, and C.J. Hollister.

C. J. Hollister is the Memphis police officer who testified that the victim identified the appellant as the person who shot him. According to the appellant, when Hollister testified, it was a complete surprise to both the appellant and his lawyer. According to the appellant, his attorney apologized to him and his family and said it was the first time he heard about the evidence.

Following his conviction, the appellant received a copy of the police report from Ballin's office. The report listed several additional people who were in the store, including Jacob Potts, Tommy Randle, Alfred Jones, and Larry Hill. The appellant stated that he did not receive any discovery materials prior to trial.

According to the appellant, his trial counsel told him that the testimony of the co-defendants would not be sufficient to convict him during trial. Counsel explained that additional information would be required. The appellant claimed that his attorney maintained during his entire representation that the State did not have sufficient information to convict him.

During the preparation for the trial, the appellant was offered several deals by the State. He said the last offer was for a total of four years in jail. He rejected the offer based on counsel's advice

and because he was innocent. At the time of his arrest, the appellant was a junior in college. He had never been arrested before.

The appellant testified that he wanted to testify at the end of the trial about his presence at the scene. However, his lawyer suggested that his testimony would have corroborated the testimony of his co-defendants. Counsel also believed that at the time, the appellant would be convicted of second degree murder. If he testified, the appellant may have faced a life sentence. Based on that advice, the appellant decided not to testify.

If he had testified, the appellant would have explained that he had been robbed of $2,700. He was at the crime scene to recover some of that money. He stated that he took his co-defendant, Demarcus Ratliff, with him for protection. The person with the money did not show up at the store. However, Ratliff and his friends decided to rob the store. The appellant then went outside.

Attorney Marvin Ballin testified that he has practiced law for thirty-six or thirty-seven years. During the last ten years his practice has focused on criminal law. Throughout the trial preparations, the appellant maintained his innocence.

As the preparations continued, the co-defendants in this case were entering guilty pleas. Mr. Ballin was aware of their statements and knew what the co-defendants would say during trial. According to the co-defendants, the appellant employed them to get his money back. However, counsel believed that he told the appellant that the clerk or someone would put him at the scene and explained that to his client. Yet, the appellant maintained that he was not at the store.

The trial attorney acknowledged that he told the appellant that the co-defendant's testimony alone would not be sufficient for a conviction. But he did not tell him that the case was "a lock." Mr. Ballin believed that he had finally gotten a plea offer from the State for three years. He begged the appellant and his family to accept the deal. Because of the low offer, counsel explained that the State might have some problems with the case. However, the appellant maintained his innocence.

On the Sunday before trial, counsel tried again to resolve the case with a plea agreement. However, a new prosecutor had been assigned the case. She was prepared for trial. Even at that time, the appellant did not want to deal. Counsel noted that he could not force his client to take a plea.

Mr. Ballin explained that the testimony of Officer Hollister regarding the victim's identification of the appellant was surprising and devastating. However, as provided in the report, the officer wrote that the victim had "advised [the officer] that male black Spencer Payne and Quantreal Underwood were responsible for his shooting." The exact testimony at trial is not included with the record in this appeal.

Counsel did not believe that he was entitled to the report until after the officer testified. In fact, the prosecutor had an open file policy, and counsel took advantage of this policy.

Mr. Ballin acknowledged that he could have obtained a copy of the police report in this case for four dollars. Private Investigator Curtis Mull explained that a Memphis Police Department report can be obtained for ten dollars. The state stipulated that the report at issue would have been available.

Post-Conviction Standard of Review

In analyzing the issue raised, we first note that a petitioner bringing a post-conviction petition for relief bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App.1998). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks, 983 S.W.2d at 245 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, the appellate court is bound by the trial court's findings of fact, unless the record preponderates against those findings. Hicks, 983 S.W.2d at 245.

Effectiveness of Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The burden is on the petitioner to show that the evidence preponderated against those findings. Id.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins, 911 S.W.2d at 347. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## Failure to Interview Witnesses

Although the appellant claims that his attorney failed to interview several witnesses who would have provided information helpful to the defense, the appellant did not call these witnesses at the post-conviction hearing, and this Court cannot guess what their testimony would have been. The appellant has therefore failed to demonstrate any prejudice from this alleged deficiency. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

## Failure to Obtain Police Report

The appellant has likewise failed to demonstrate prejudice from counsel's omission in obtaining a police report filed by Officer Hollister wherein the victim identified the appellant and Spencer Payne as the perpetrators of the crime in question. This Court held on direct appeal that this statement of the victim was admissible at trial as an excited utterance and thus an exception to the hearsay rule. Underwood, 1997 Tenn. Crim. App. LEXIS 1018, at *4. Therefore, even if counsel had obtained the report earlier, the statement of the victim identifying the appellant could not have been excluded. In this appeal the appellant argues that had counsel obtained the report earlier he could have used it for some unspecified impeachment purposes. However, the victim and Spencer Payne were both dead at the time of trial. So it is difficult to see how this impeachment might have proceeded.

The appellant also makes the bare assertion that had he known in advance of trial that the victim had given an admissible statement identifying the appellant as the man who shot and robbed the victim, he would have entered a "best interest plea" pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). At the time of his trial the appellant steadfastly maintained his innocence. He continued to do so at the post-conviction hearing and on appeal. Despite his attorney's entreaties, the appellant refused to accept a plea bargain offer wherein he would have served only three to four years in prison. The appellant's uncorroborated allegation that he would have pled guilty had he known of the victim's statement to police is simply insufficient to carry his burden to prove by clear and convincing evidence that he is entitled to relief. See State v. Kerley, 820 S.W.2d 753, 757 (Tenn. Crim. App. 1991).

## Conclusion

In light of the foregoing, the Court is of the opinion that there is no reversible error presented by this record. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE